# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. CALVIN LANDERS

**Appeal from the Criminal Court for Shelby  County**
**No. 05-03748    Chris Craft, Judge**

---

**No. W2007-01088-CCA-R3-CD  - Filed July 25, 2008**

---

A Shelby County Criminal Court jury convicted the defendant, Calvin Landers, of rape of a child, and the trial court sentenced him to serve a 20-year sentence in the Department of Correction.  The defendant now appeals and claims that the evidence is insufficient to support the conviction and that the sentence is excessive.  Because the record supports the judgment of the trial court, we affirm both the conviction and the sentence.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES, J. and DAVID G. HAYES, SR. J., joined.

Robert Wilson Jones, District Public Defender; and Phyllis Aluko, Assistant Public Defender, for the appellant, Calvin Landers.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, Rachell Copeland, a sexual assault nurse, testified that on January 9, 2005, she examined C.C., the victim in the present case.[1]  The examination was the result of the victim's report that she had been sexually assaulted.  In the medical history obtained from the victim by Ms. Copeland, the victim, who was then 11 years old, recounted that on January 8, 2005, the defendant, who was the victim's great-uncle, made her "suck his private part and told [her] to lay in bed and he stuck his thing in [her]."  Ms. Copeland testified that the victim pointed to her private area between her legs when clarifying where the defendant had "stuck" her.

---

[1] It is the policy of this court to refer to victims of sexual offenses by their initials.

Ms. Copeland testified that her physical examination of the victim revealed a laceration in the posterior joining of the victim's labia. The victim's hymen was missing in part, and Ms. Copeland testified that the incomplete state of the hymen was "indicative of penetration." Ms. Copeland also testified that the victim had recent, though "non-specific" irritation in the peri-anal area. Ms. Copeland testified that she concluded that the victim suffered blunt penetration of the vagina on January 8, 2005. She explained that "blunt" penetration signified penetration by a rounded object, such as a penis. Ms. Copeland submitted swabs of the victim's breasts to the evidence custodian for the Memphis Sexual Assault Resource Center.

C.C., the victim, testified that, on January 8, 2005, she lived with her grandmother at 107 Echo Cove Circle in Collierville. The defendant, who is the victim's great uncle, resided in the same house. The victim testified that she was 11 years old in January 2005. She testified that between 2:00 p.m. and 4:00 p.m. on January 8, 2005, in the defendant's room, the defendant "told [her] to lay on the bed and [she] told him no. And then he told [her] that [she] had to suck his private parts," meaning the anatomy "[i]n between his legs." The victim testified that the defendant "put [her] head down there and then he told [her] to suck on it for . . . three seconds, and then [she] stopped and then [she] had stopped and then he did it again." The victim further testified that the defendant "licked . . . and he slobbered on" her breasts. She testified that the defendant "stuck his private part into [her private part]," meaning the anatomy "[i]n between [her] legs." The victim testified that during this episode, the defendant kept his bedroom door locked. The victim testified that the defendant told her not to tell anyone about the assault but that she told her grandmother.

Clara Jones, the victim's grandmother, testified that she had lived at 107 Echo Cove Circle for 35 to 38 years. She testified that the defendant, who is her brother and was then 51 years of age, resided in the house with other family members, including 11 of Ms. Jones's grandchildren, one of whom was the victim. Ms. Jones testified that in January 2005, the victim told Ms. Jones that the defendant molested her. Ms. Jones confronted the defendant, and one of her daughters called the police. The defendant stayed in the house until the police came.

Michael Williams testified that he lived at 107 Echo Cove Circle with Ms. Jones, his sister. Other relatives, including the defendant, who is Mr. Williams' half-brother, stayed at the house. On January 8, 2005, Mr. Williams entered the defendant's room and saw the victim standing between the defendant's legs. Mr. Williams testified that the door to the defendant's room was not locked when he entered.

Collierville police detective Gannon Hill testified that he began his investigation of the defendant on January 9, 2005. The detective collected bedding and clothing from the house at 107 Echo Cove Circle and obtained a buccal swab from the defendant's mouth. He also collected the victim's rape kit prepared by Ms. Copeland. Detective Hill testified that he sent the collected items to the Tennessee Bureau of Investigation (TBI) for analysis.

TBI serologist Lawrence James testified that he performed forensic deoxyribonucleic acid (DNA) analysis on evidence submitted to the TBI. He identified the defendant's buccal swab and the victim's rape kit. The latter contained a swab from the victim's breast which contained DNA that matched the defendant's DNA obtained from the buccal swab.

The State elected the vaginal penetration of the victim as the basis for the rape of a child prosecution, and the trial court informed the jury of the election. The State then rested its case.

The defendant testified simply that he did not rape the victim. On cross-examination, he admitted that his saliva may have been found on the victim's breast. He testified that the victim came into his room and said, "Here Uncle Calvin lick my titty." He admitted that he complied. He persisted in denying that he had sexual intercourse with the victim but claimed that he saw the victim "take her finger and injure herself."

The jury convicted the defendant of rape of a child, and the trial court sentenced him to serve 20 years in the Department of Correction.

In his first issue on appeal, the defendant challenges the sufficiency of the evidence of penetration as an element of rape. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). This court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." T.C.A. § 39-13-522(a) (2006). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7) (2003).

In the present case, the defendant claims that the State failed to prove the element of penetration. We disagree. The victim testified that the defendant "stuck his private part into [her private part]," meaning the anatomy "[i]n between [her] legs," on January 8, 2005. Also, the sexual assault nurse testified that, based upon her physical examination of trauma to the victim's vagina, the victim experienced vaginal penetration on January 8, 2005. This evidence sufficiently established the element of penetration.

In the defendant's other issue, he claims that his 20-year sentence is excessive. Specifically, the defendant asserts that the mid-range sentence should have been mitigated based upon the defendant's medical problems and his remorse.

The offense in the present case occurred prior to the effective date of the 2005 sentencing law amendments, and the trial court applied the sentencing law in effect at the time of the offense.

When there is a challenge to the length of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. At the conclusion of the sentencing hearing, the trial court determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b); -103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The trial court in the present case imposed a mid-range sentence of 20 years. *See* T.C.A. § 40-35-111(b)(1) (2003) (establishing minimum sentence for Class A offense at 15 years); *id.* § 40-35-112(a)(1) (establishing sentencing Range I for Class A offenses at 15 to 25 years). "The presumptive sentence for a Class A felony [pursuant to the pre-2005 sentencing law] shall be the midpoint of the range if there are no enhancement or mitigating factors." *Id.* § 40-35-210(c). "Should there be enhancement and mitigating factors for a Class A felony, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate . . . ., and then reduce the sentence within the range as appropriate . . . ." *Id.* § 40-35-210(e). Pursuant to Tennessee Code Annotated section 40-35-113(13), a sentence may be mitigated by "[a]ny . . . factor consistent with the purposes" of the sentencing law. *Id.* § 40-35-113(13).

In the present case, the claims of medical problems and remorse are unavailing. The defendant established no "medical problems," much less any such problems that would merit mitigation of the sentence. Although the defendant testified at trial that he was remorseful about

-4-

sucking the victim's breasts, he denied raping the victim and, therefore, expressed no remorse about the conviction offense. Accordingly, the record supports the trial court's failure to mitigate the presumptive, mid-range sentence of 20 years.[2]

The result is that the conviction and sentence are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2]The trial court declined to enhance the defendant's sentence based upon his prior conviction of reckless driving.